1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK K. BOWERS, | Case No. 1:23-cv-01483-KES-SAB |
| Plaintiff, | ORDER SCREENING COMPLAINT |
| v. | (ECF No. 1) |
| CITY OF PORTERVILLE, et al., | **THIRTY DAY DEADLINE** |
| Defendants. | |

## I.

## BACKGROUND

Mark K. Bowers ("Plaintiff"), proceeding *pro se* and *in forma pauperis* in this action, brings twenty-one causes of action against nine Defendants: (1) City of Porterville; (2) Porterville Police Department ("PPD"); (3) Officer Jarid Skiles; (4) Lieutenant Richard Standridge; (5) State of California, Tulare County District Attorney's Office Porterville Branch; (6) Alexander Cho; (7) Jonathan Juanez; (8) Ariana Luna; and (9) Jesus Luna III. Plaintiff's complaint is currently before the Court for screening.

## II.

## SCREENING REQUIREMENT

Because Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a case at any time if the Court determines the complaint "(i) is frivolous or malicious; (ii) fails to state a claim

1   on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

2   from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir.

3   2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by

4   prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma*

5   *pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United

6   States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma*

7   *pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir.

8   1998) (affirming sua sponte dismissal for failure to state a claim).

9        In determining whether a complaint fails to state a claim, the Court uses the same

10   pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a

11   short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R.

12   Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the

13   elements of a cause of action, supported by mere conclusory statements, do not suffice."

14   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

15   544, 555 (2007)).

16        In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and

17   accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89,

18   94 (2007). Although a court must accept as true all factual allegations contained in a complaint,

19   a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A]

20   complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops

21   short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting

22   Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for

23   the court to draw the reasonable conclusion that the defendant is liable for the misconduct

24   alleged. Id.

### III.

### COMPLAINT ALLEGATIONS

27        The Court accepts Plaintiff's allegations as true *only* for the purpose of the *sua sponte*

28   screening requirement under 28 U.S.C. § 1915.

1        **A.       General Factual Allegations**

2            Plaintiff alleges that during the period of time that he lived next door to the Lunas, he

3   endured "constant harassment."  (Compl. ¶ 15.)   In summary, from May 2020 through 2023,

4   Plaintiff alleges the Lunas "conspired" with unnamed neighbors, the PPD, the Porterville City

5   Building/Permitting Department, the Tulare County District Attorney's Office, the City of

6   Porterville, a leasing company, gang members, and other unnamed individuals to engage in

7   allegedly harassing conduct, including: staring at Plaintiff and standing on the sidewalk when he

8   arrives home (Compl. ¶¶ 29, 51); making dogs bark excessively (Compl. ¶¶ 15, 17, 36, 53, 57,

9   58, 59); playing mechanical noises while Plaintiff is outside (Compl. ¶¶ 55, 58); installing

10  motion lights that shined in Plaintiff's backyard (Compl. ¶ 64); leaving a vehicle running on the

11  street in view of Plaintiff's home (Compl. ¶ 65); complaining about a utility trailer outside

12  Plaintiff's home (Compl. ¶ 63); impersonating Lowe's employees and telling Plaintiff he must

13  move his RV because there is no overnight parking at the store (Compl. ¶ 67); complaining about

14  Plaintiff mowing his lawn and blowing yard clippings (Compl. ¶ 33); sweeping yard clippings in

15  front of Plaintiff's house (Compl. ¶ 52); tampering with Plaintiff's vehicles (Compl. ¶¶ 18, 19,

16  45, 47); recording Plaintiff with cell phones while pointing and laughing at him (Compl. ¶ 20);

17  taking photographs of Plaintiff's backyard from the Lunas' yard (Compl. ¶ 21); filing a criminal

18  case against Plaintiff for "Disobeying Court Orders" (Compl. ¶¶ 24, 25, 26); defaming Plaintiff

19  (Compl. ¶¶ 27, 28); dismantling a fence located on the property that Plaintiff leased (Compl. ¶

20  28); issuing citations to Plaintiff for his dog's lack of licensure, running large, and barking

21  (Compl. ¶¶ 16, 28, 37); reporting structures on Plaintiff's property that are out of compliance

22  with City ordinances (Compl. ¶ 30); directing people on Facebook to contact Plaintiff about

23  items he lists for sale (Compl. ¶ 31); threatening and verbally harassing Plaintiff (Compl. ¶¶ 34,

24  42, 51, 52); sending an individual to Plaintiff's home to harass him (Compl. ¶ 56); surveilling

25  Plaintiff in person or by use of security cameras pointed into Plaintiff's home (Compl. ¶¶ 20, 21,

26  40, 41, 45, 46, 51, 62, 65, 66, 67); stalking Plaintiff online by purchasing a generator Plaintiff

27  listed for sale but not  responding to communications about the purchase (Compl. ¶ 48); and

28  calling the PPD, who would respond and generally harass Plaintiff (see Compl. generally).

**B.**      **October 14, 2021 Incident**

On October 14, 2021, Plaintiff was sitting in his vehicle parked on the street near his driveway when Officer Skiles approached him.   The Lunas allegedly contacted the PPD regarding both an unknown white male in a white truck and to perform a welfare check on Plaintiff.   Plaintiff was irritated because of the previous instances where the Lunas contacted the PPD and officers would respond and harass Plaintiff.   Officer Skiles requested Plaintiff's name, which Plaintiff refused to provide.   (Compl. ¶¶ 2-3, 49.)

Plaintiff asked Officer Skiles to serve court documents on the Lunas.   Officer Skiles refused, threw the paperwork in Plaintiff's truck, and walked towards his vehicle.   Plaintiff told Officer Skiles he had to serve the documents, which Plaintiff alleges "was out of context with what [Plaintiff] meant to say." (Compl. ¶ 4.)   Plaintiff exited his vehicle and approached Officer Skiles.   Officer Skiles exited his vehicle, got in Plaintiff's face, and tackled him, which pushed Plaintiff into Officer Skiles' vehicle and headfirst onto the ground.   Officer Skiles pressed his knee into Plaintiff's back, pulled Plaintiff's arms back in an abnormal position to apply handcuffs, yelled at Plaintiff to stop resisting, and told Plaintiff he was under arrest.   Officer Skiles yanked Plaintiff from the ground by Plaintiff's elbow.   Plaintiff complained that the handcuffs were too tight, but Officer Skiles did not check them until EMS arrived.   Plaintiff was arrested for striking and assaulting Officer Skiles.  (Compl. ¶¶ 5-7, 11.)

Although Plaintiff refused medical assistance, Officer Skiles transported Plaintiff to Sierra View Hospital before transporting Plaintiff to jail.   The hospital and Officer Skiles required Plaintiff to answer questions regarding his health insurance provider, medical history, and family contact information, which Plaintiff alleges violated his privacy.   (Compl. ¶ 12.) Officer Skiles towed Plaintiff's vehicle because Plaintiff had been arrested.   Officer Skiles searched Plaintiff's vehicle, took an inventory, and completed a report.   Plaintiff alleges he had to pay $1,639.00 in October 2021 to retrieve his vehicle.   (Compl. ¶ 10.)   PPD also failed to provide the report to Plaintiff in violation with PPD's unspecified policy.   (Compl. ¶ 61.)

On October 16, 2021, Plaintiff delivered a complaint stating he intended to sue PPD.   On October 17, 2021, PPD vehicles harassed and followed Plaintiff. (Compl. ¶ 14.)

On December 8, 2021, Plaintiff was notified the DA's Office filed a case against him for violation of California Penal Code 148(A)(1).   Plaintiff retained a defense attorney for $4,800.00.  The case was dismissed on October 20, 2022.  (Compl. ¶ 49.)  Plaintiff alleges he has exhausted all administrative remedies available against the City, PPD, and the DA's Office. (Compl. ¶ 69.)

## IV.

## DISCUSSION

The Court first addresses the general deficiencies in Plaintiff's complaint then turns to providing legal standards—including the applicable statute of limitations—for some of Plaintiff's intelligible causes of action listed on the cover of Plaintiff's complaint for Plaintiff's consideration when deciding whether he can amend his complaint in good faith.[1]

### A.   General Deficiencies in Plaintiff's Complaint

1.   Federal Rule of Civil Procedure 8 Pleading Requirements

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2).  At a minimum, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests."  Twombly, 550 U.S. at 555 & n.3 (citation and quotation marks omitted); see also Iqbal, 556 U.S. at 678 (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  A complaint violates Rule 8 if a defendant would have difficulty responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011). Courts may dismiss a complaint for failure to comply with Rule 8 even when the complaint is not "wholly without merit."  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996). "Rule 8(e), requiring each averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." Id.

---

[1] The Court is unsure what independent causes of action Plaintiff asserts in his caption, for example, when alleging separate claims for "erroneous lawsuit"; "online stalking"; "intimidation"; or "coercion."  Should Plaintiff amend his complaint, he must separate each cause of action, state the legal basis for that cause of action, and identify concise factual allegations that both support the elements of the claim and show that the specified Defendant committed the violation.

Plaintiff's complaint is an impermissible "shotgun" pleading.  See Hughey v. Camacho, No. 2:13-CV-2665-TLN-AC, 2014 WL 5473184, at *4 (E.D. Cal. Oct. 23, 2014) (noting a shotgun pleading occurs when "one party pleads multiple claims and does not identify which specific facts are allocated to which claim.")  Plaintiff's lists twenty-one causes of action in the caption but does not state which facts relate to which claim, how the facts relate to the elements of the legal claims raised, nor which Defendants are implicated.  Further, two of the Defendants named in the caption—Alexander Cho and Jonathan Juanez—do not appear anywhere in the factual allegations.  The Court is unsure how at least ten of Plaintiff's listed causes of action are relevant despite Plaintiff's prolix factual allegations.

The body of Plaintiff's complaint is an unchronological scattershot regurgitation of factual allegations that states Defendants and other individuals conspired together and engaged in allegedly harassing conduct.  Should Plaintiff choose to amend his complaint to include numerous claims and defendants, he must separate each cause of action; state which Defendant he believes is liable for that cause of action; and identify *concise* factual allegations that support both the legal standard for the cause of action and show that the particular Defendant committed the violation asserted.  See Bonnette v. Dick, No. 1:18-CV-0046-DAD-BAM, 2020 WL 3412733, at *3 (E.D. Cal. June 22, 2020).  The failure to do so upon amendment may result in recommendation of dismissal of this action.

2.  Claims on Behalf of Others

Plaintiff's complaint appears to allege claims on behalf of other individuals.  (See Compl. ¶¶ 15, 23, 34, 43.)  However, Plaintiff is the sole signatory on the complaint, and there is no indication from the record that he is an attorney. A plaintiff, who is not an attorney, may not represent anyone but himself in court.  Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997); C. E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987); see also Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented").  Should Plaintiff elect to amend his complaint, he may not bring claims on behalf of anyone's behalf, including family members.

1          3.          Statute of Limitations

2          A majority of Plaintiff's shotgun factual allegations appear to be time-barred.  Failure to

3    comply with the applicable statute of limitations may be grounds for dismissal at the screening

4    stage if it apparent from the face of the complaint that plaintiff cannot "prevail, as a matter of

5    law, on the equitable tolling issue."  Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir.

6    1993).  In actions where the federal court borrows the state statute of limitations, courts should

7    also borrow all applicable provisions for tolling the limitations period found in state law.  Jones

8    v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  This applies to both statutory and equitable tolling.

9          "Equitable tolling under California law 'operates independently of the literal working of

10   the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure

11   fundamental practicality and fairness."  Id. at 928 (quoting Lantzy v. Centex Homes, 31 Cal.4th

12   363, 370 (2003)).  "Under California law, a plaintiff must meet three conditions to equitably toll

13   a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant

14   must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's

15   conduct must have been reasonable and in good faith."  Fink v. Shedler, 192 F.3d 911, 916 (9th

16   Cir. 1999) (internal quotation marks and citation omitted).

17         Should Plaintiff elect to amend his complaint, he must allege facts establishing each

18   claim is not time-barred or that equitable tolling applies.

19         4.          The Rooker-Feldman Doctrine

20         Although unclear, Plaintiff's complaint appears to challenge actions occurring in state

21   court through the filing of this action.  Plaintiff describes multiple civil restraining orders, animal

22   control citations that required state court appearances, and criminal complaints filed against

23   Plaintiff.   To the extent Plaintiff alleges that these state court proceedings were decided

24   improperly, federal district courts have no authority to review such proceedings.  See Rooker v.

25   Fidelity Trust Company, 263 U.S. 413, 44 S. Ct. 149 (1923).  The Rooker-Feldman doctrine

26   provides that the losing party in a state court action cannot bring "a suit in federal district court

27   asserting as legal wrongs the allegedly erroneous legal rulings of the state court and seek[] to

28   vacate or set aside the judgment of that court" as this is a forbidden de facto appeal.  Noel v.

1  <u>Hall</u>, 341 F.3d 1148, 1156 (9th Cir. 2003).  The federal court must refuse to hear the de facto

2  appeal and also must refuse to decide any issue that is "inextricably intertwined" with the issue

3  resolved by the state court decision.  <u>Id.</u> at 1158.

4        To the extent that Plaintiff seeks intervention for actions which occurred in state court,

5  this Court cannot provide such relief.

6        **B.    Plaintiff's Federal Claims Under 42 U.S.C. § 1983**

7        Plaintiff alleges six causes of action asserting violations of his constitutional rights under

8  42 U.S.C. § 1983.  Section 1983 provides a cause of action for the violation of a plaintiff's

9  constitutional or other federal rights by persons acting under color of state law.  <u>Nurre v.</u>

10 <u>Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178,

11 1185 (9th Cir. 2006); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim

12 under section 1983, Plaintiff is required to show that (1) each defendant acted under color of

13 state law and (2) each defendant deprived him of rights secured by the Constitution or federal

14 law.  <u>Long</u>, 442 F.3d at 1185.  There is no *respondeat superior* liability under section 1983, and

15 therefore, each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.

16       Because section 1983 contains no specific statute of limitations, the statute of limitations

17 for claims under 42 U.S.C. § 1983 is "the personal injury statute of limitations of the state which

18 the cause of action arose."  <u>Alameda Books, Inc. v. City of Los Angeles</u>, 631 F.3d 1031, 1041

19 (9th Cir. 2011).  In California, personal injury claims must be filed within two years.  <u>Id.</u>

20       It is unclear from Plaintiff's shotgun complaint which Defendants he is asserting section

21 1983 claims against.  To the extent Plaintiff intends to allege section 1983 claims solely against

22 the Lunas, Plaintiff must establish they were acting under color of state law.

23       1.    <u>First, Second, and Twenty-First Claims for Violations of Fourth and Fourteenth</u>
24             <u>Amendments</u>

25       The Fourth Amendment provides that 'the right of the people to be secure in their

26 persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

27 violated.  U.S. Const. amend. IV. "[T]he Fourth Amendment is enforceable against the States

28 through the Fourteenth Amendment."  <u>Camara v. Mun. Court of City & Cty. of San Francisco</u>,

8

1   387 U.S. 523, 528 (1967).  "To establish a viable Fourth Amendment claim, a plaintiff must

2   show not only that there was a search and seizure as contemplated by the Fourth Amendment,

3   but also that said search and seizure was unreasonable and conducted without consent."  Rakas v.

4   Illinois, 439 U.S. 128, 143 (1978); United States v. Rubio, 727 F.2d 786, 796–97 (9th Cir. 1983).

5         A police officer may make a brief investigatory stop to investigate possible criminal

6   behavior when he has reasonable suspicion that criminal activity may be afoot.  U.S. v. Montero-

7   Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000).  The officer "must be able to articulate more than

8   an 'inchoate and unparticularized suspicion' or 'hunch' of criminal activity."  Id. (quoting

9   Illinois v. Wardlow, 120 S.Ct. 673, 676 (2000)).  "[R]easonable suspicion exists when an officer

10  is aware of specific, articulable facts which, when considered with objective and reasonable

11  inferences, form a basis for particularized suspicion."  Id.  This requires an assessment based on

12  the totality of the circumstances and the circumstances must arouse reasonable suspicion that the

13  particular individual being stopped has committed or is about to commit a crime.  Id.

14        Claims alleging excessive force in making an arrest are analyzed under the Fourth

15  Amendment "objective reasonableness" standard rather than under a substantive due process

16  standard.  Price v. Sery, 513 F.3d 962, 967 (9th Cir. 2008).  "Because the Fourth Amendment

17  provides an explicit textual source of constitutional protection against this sort of physically

18  intrusive governmental conduct, that Amendment, not the more generalized notion of

19  'substantive due process,' must be the guide for analyzing these claims."  Graham v. Connor,

20  490 U.S. 386, 394 (1989) overruled on other grounds by Saucier v. Katz, 533 U.S. 194 (2001).

21        In making an arrest, the Fourth Amendment requires that police officers use only the

22  amount of force that is objectively reasonable in light of the circumstances facing them and

23  neither tackling nor punching a suspect to arrest them necessarily constitutes excessive force.

24  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  The question is whether the

25  amount of force used was "objectively reasonable in light of the facts and circumstances

26  confronting the officers.  Blankenhorn, 485 F.3d at 477; see also Venegas v. Wagner, 704 F.2d

27  1144, 1146 (9th Cir. 1983) (statute of limitations on a § 1983 false arrest claim accrues from the

28  time of arrest).

Although unclear, the Court construes Plaintiff's Fourth Amendment Claim is in reference to the arrest, force, and search and seizure of his vehicle that occurred on October 14, 2021.  (Compl. ¶¶ 2-8, 15.)  The statute of limitations for Plaintiff's § 1983 claims arising from Defendants' alleged use of force expired by October 14, 2023.  Plaintiff did not file the instant action until October 17, 2023; therefore, these claims, as alleged, are time-barred.  Should Plaintiff elect to amend his complaint, he must state a claim that complies with the Rule 8 pleading standards and allege facts establishing that the statute of limitations has not run or that equitable tolling applies.

2.   Third Claim for Violation of Ninth Amendment

The Ninth Amendment provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986).  While "[i]t has been argued that the ninth amendment protects rights not enunciated in the first eight amendments[,] "the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."  Id.; accord Montana Caregivers Ass'n, LLC v. United States, 526 F. App'x 756, 758 (9th Cir. 2013) (unpublished); see also San Diego Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996) (rejecting argument that Ninth Amendment encompasses right to bear firearms).  Then Ninth Amendment is simply a rule on how to read the constitution.  Montana Caregivers Ass'n, LLC v. United States, 841 F.Supp.2d 1147, 1150 (D. Mont. 2012), aff'd, 526 F. App'x 756 (9th Cir. 2013).

While the Court is unaware what facts Plaintiff's purported claim for violation of the Ninth Amendment is based upon or which Defendants allegedly violated the Ninth Amendment, Plaintiff cannot state a cognizable section 1983 claim asserting such a violation.

3.   Fourth Claim for Violation of Third Amendment

The Third Amendment states: "[n]o Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law."  "[T]he Third Amendment protects private citizens from incursion by the military into their property interests, and guarantees the military's subordinate role to civil authority."  Mitchell v.

1  City of Henderson, No. 2:13-CV-01154-APG, 2015 WL 427835, at *18 (D. Nev. Feb. 2, 2015).

2  Plaintiff fails to allege any facts regarding a military incursion into his private home.  If Plaintiff

3  elects to amend his complaint, he must state facts supporting such a claim.

4        4.    Fifth Claim for *Monell* and Supervisory Liability

5        **a.    Monell Liability**

6        Plaintiff names City of Porterville, PPD, and appears to sue some named individual

7  Defendants in both their official and individual capacities.[2]  However, the Court finds Plaintiff

8  fails to allege any facts pertaining to a Monell claim.

9        A local government unit may not be held responsible on a § 1983 claim for the acts of its

10  employees under a *respondeat superior* theory of liability.  Monell v. Dep't of Social Servs., 436

11  U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it inflicts the

12  injury complained of through a policy or custom.  Waggy v. Spokane Cnty. Washington, 594

13  F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the plaintiff must show

14  that a constitutional right was violated, the municipality had a policy, that policy was deliberately

15  indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the

16  constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400

17  (1997); Burke v. Cnty. of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. Cnty. of

18  Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a

19  'deliberate choice to follow a course of action . . . made from among various alternatives by the

20  official or officials responsible for establishing final policy with respect to the subject matter in

21  question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting

22  Pembaur v. Cty. of Cincinnati, 475 U.S. 469, 483 (1986)).

23        Courts generally group Monell claims under three categories.  See, e.g., Brown v. Contra

24  Costa Cty., No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) ("A Monell

25

26  [2] In the caption of his complaint, Plaintiff names "Jared Skiles, and in his individual capacity."  (ECF No. 1 at 1.)
    Plaintiff uses the same phrase when naming Defendants Standridge, Cho, and Juanez in the caption.  (Id.)  Given
27  Plaintiff alleges Officer Skiles and Lt. Standridge are public officials, the Court construes Plaintiff's use of the
    phrase "and in his individual capacity" after Skiles, Standridge, Cho, and Juanez as an intent to sue them in both
28  their official and individual capacities.  As previously discussed, Plaintiff's complaint does not inform the Court
    who Cho or Juanez are, nonetheless whether either is a public official.

1  claim for § 1983 liability based on public policy can be stated in one of three ways—(1) when

2  official policies or established customs inflict a constitutional injury; (2) when omissions or

3  failures to act amount to a local government policy of 'deliberate indifference' to constitutional

4  rights; or (3) when a local government official with final policy-making authority ratifies a

5  subordinate's unconstitutional conduct." (quoting Clouthier v. Cty. of Contra Costa, 591 F.3d

6  1232, 1249-50 (9th Cir. 2010))); Ponce v. City of Fontana, No. EDCV1500074VAPSPX, 2015

7  WL 13765047, at *3 (C.D. Cal. July 17, 2015) ("Three distinct theories may support a Monell

8  claim: (1) ratification; (2) inadequate training; and (3) unconstitutional custom, practice, or

9  policy." (citing Clouthier, 591 F.3d at 1249-50)).

10        In order to establish liability under Monell, the plaintiff must plead facts showing that

11  "the policy is the moving force behind the constitutional violation."   Dougherty v. Cty. of

12  Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); see also Cty. of Oklahoma v. Tuttle, 471 U.S.

13  808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the

14  particular constitutional violation alleged.").    Generally, "[p]roof of a single incident of

15  unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the

16  incident includes proof that it was caused by an existing, unconstitutional municipal policy,

17  which policy can be attributed to a municipal policymaker," Tuttle, 471 U.S. at 823-24, and a

18  Monell claim generally requires more than "sporadic" incidents.  See Trevino v. Gates, 99 F.3d

19  911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or

20  sporadic incidents."); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012)

21  (An "isolated instance ... is insufficient evidence of a 'policy statement, ordinance, regulation, or

22  decision officially adopted and promulgated by' the County." (internal citations omitted)).

23        As stated, Plaintiff's complaint does not allege any facts to support any Monell theory or

24  which Defendants are subject to his fourth cause of action.  If Plaintiff does choose to file an

25  amended complaint pursuing a Monell claim, Plaintiff shall consider the legal standards

26  applicable to each theory.

27        **b.    Supervisory Liability**

28        As a threshold matter, Plaintiff fails to allege any named defendant—or unnamed

individual—is a supervisor.  However, if Plaintiff seeks to hold a supervisor liable based solely upon their supervisory positions, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*.  Iqbal, 556 U.S. at 676–77.  Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011).  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation."  Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994).  Because Plaintiff fails to allege any facts that support a cognizable section 1983 claim against any unidentified supervisor.

### c.     State of California, Tulare County District Attorney's Office Porterville Branch as a Defendant

Plaintiff alleges the Tulare County District Attorney's Office dismissed two criminal cases against him, which "violat[ed] the Fourteenth Amendment of the Constitution, Procedural Due Process, denying [Plaintiff] equal protection of the laws, and [] subjected [Plaintiff] to the arbitrary exercise of government power."  (Compl. ¶ 26.)  As a threshold matter, there is a conflict in this circuit regarding whether such an entity is properly subject to suit under section 1983.  See Nazir v. Cnty. of Los Angeles, No. CV 10-06546 SVW AGRX, 2011 WL 819081, at *8 (C.D. Cal. Mar. 2, 2011).[3]  Assuming for screening purposes that a DA's Office is properly subject to suit under section 1983 akin to a municipality, "liability may be imposed only if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. Kastis v. Alvarado, No. 1:18-cv-01325-DAD-BAM, 2019 WL 3037912 *6-7 (E.D. Cal. Jul. 11, 2019) (citing Monell, 436 U.S. at 692).

Plaintiff's conclusory allegations against the District Attorney's Office that it violated his

---

[3] The DA's Office may be immune from section 1983 liability by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.  Kastis, 2019 WL 3037912, at *8.

1  constitutional rights fails to provide a sufficient basis from which to plausibly infer <u>Monell</u>

2  liability.  Plaintiff therefore fails to state a claim against the DA's Office.

3      5.    <u>Twentieth and Twenty-First Claims for "Arbitrary Exercise of Government

4            Power" and Due Process and Equal Protection</u>

5          Claims for violation of the Fourteenth Amendment's Due Process Clause can be based on

6  violations of substantive due process or procedural due process.  <u>See</u> <u>Cty. of Sacramento v.</u>

7  <u>Lewis</u>, 523 U.S. 833, 840 (1998).  The right to substantive due process is aimed at protecting

8  against the *arbitrary exercise of government power* and a violation occurs only when

9  government conduct "shocks the conscience and violates the decencies of civilized conduct."  <u>Id.</u>

10  (emphasis added.)  The Supreme Court has emphasized that only the most egregious official

11  conduct can be said to be "arbitrary in the constitutional sense[.]"  <u>See</u> <u>Collins v. Cty. of Harker</u>

12  <u>Heights, Tex.</u>, 503 U.S. 115, 129 (1992). Conscious-shocking conduct does "more than offend

13  some fastidious squeamishness or private sentimentalism about combatting crime too

14  energetically[;]" it is conduct "bound to offend even hardened sensibilities." <u>See</u> <u>Rochin v.</u>

15  <u>California</u>, 342 U.S. 165, 172 (1952).

16          The Court construes Plaintiff's twentieth claim for "arbitrary exercise of government

17  power" to be a duplicative of his twenty-first claim for "due process and equal protection."

18  Sifting through Plaintiff's prolix complaint, Plaintiff fails to clearly allege facts to support an

19  inference that any action by a state actor was the result of the high standard of egregious conduct

20  that is necessary to state a plausible claim for violation of substantive due process.

21      6.    <u>Claim Fourteen for Conspiracy Under Section 1983</u>

22          Plaintiff fails to state under which legal theory he brings his conspiracy claim.  However,

23  in the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege

24  [some] facts to support the existence of a conspiracy among the defendants."  <u>Buckey v. Cnty. of</u>

25  <u>Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839

26  F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in

27  concert and that some overt act was done in furtherance of the conspiracy.  <u>Sykes v. California</u>,

28  497 F.2d 197, 200 (9th Cir. 1974).

Conspiracy allegations must be more than mere conclusory statements. <u>Bonnette v. Dick</u>, 2020 WL 3412733, at *4 (citing <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1979)). A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward Cnty., Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

"[A] conclusory allegation of agreement at some unidentified point does not supply adequate facts to show illegality." <u>Twombly</u>, 550 U.S. at 557. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." <u>Id.</u> at 556.  "Allegations that identify 'the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose,' [] and allegations that identify 'which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights,' [] both have been held to be sufficiently particular to properly allege a conspiracy." <u>Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist.</u>, No. 1:10-CV-00166-AWI, 2010 WL 3154013, at *8 (E.D. Cal. Aug. 6, 2010) (citations omitted).  Importantly, to "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient." <u>Id.</u> (quoting <u>Dixon v. City of Lawton, Okl.</u>, 898 F.2d 1443, 1449  n.6 (10th Cir. 1990)).

Plaintiff's complaint fails to allege the requisite specific facts in support of his allegations that the defendants conspired against him to deprive him of unspecified civil rights.   A majority of Plaintiff's factual allegations assert that the Lunas conspired with various individuals to commit a variety of acts against Plaintiff.  (See, e.g., Compl. ¶ 30 ("Jesus Luna conspires with Porterville City Building/Permitting Department and they make a visit at my residence about a 16' X 8' building in the back yard that is over limit by 2' without a permit"); Compl. ¶ 41 (the

1    Lunas "conspire with other neighbors and the [PPD] to conduct full time surveillance on me");

2    Compl ¶ 29 (the Lunas "conspire with other neighbors to assure that one of the neighbors are

3    [*sic*] available to stare at me and my family as we come and go from the residence").)  Calling

4    the City building inspector to report a building that Plaintiff admits is not in compliance with

5    building codes is not a conspiracy to deprive Plaintiff of his constitutional rights.  A neighbor

6    calling PPD on October 14, 2021 "to perform a welfare check" on Plaintiff is not, without more,

7    a conspiracy under section 1983 to deprive Plaintiff of his constitutional rights.  (Compl. ¶ 3.)

8            Plaintiff fails to adequately allege an underlying constitutional violation.  Lacey v.

9    Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012) (noting a section 1983 conspiracy theory

10   "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an

11   underlying constitutional violation"). Other than repeatedly using the word "conspired," Plaintiff

12   fails to provide any specific facts supporting a conspiracy was afoot.  This is insufficient to state

13   a claim for a conspiracy under section 1983.

14           **C.    Supplemental Jurisdiction of State Law Claims**

15           Plaintiff fails to plausibly allege any federal claims.  Therefore, no federal claims remain

16   in which this Court has original jurisdiction.  Where a district court has original jurisdiction, it

17   may exercise supplemental jurisdiction over all claims that are that are so related that they form

18   part of the same case or controversy.  28 U.S.C. § 1367(a).  Relevant here, the district court may

19   decline to exercise supplemental jurisdiction where all claims over which the court has original

20   jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  "A district court's decision whether

21   to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is

22   purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).

23           Plaintiff's laundry list of twenty-one causes of action on the face of his complaint also

24   include fourteen claims, which are either unidentifiable or state law claims.  Although the Court

25   has discretion to exercise supplemental jurisdiction over state law claims, Plaintiff must allege

26   cognizable claims for relief under federal law upon amendment.  Should Plaintiff fail to amend

27   his complaint to plead cognizable federal claims, the Court will recommend that the District

28   Judge decline to exercise supplemental jurisdiction given the case is at the early state of

proceedings.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

       1.    California Government Claims Act

     The Court also notes that Plaintiff has failed to allege compliance with the California Government Claims Act ("GCA"), which requires that a tort claim against a public entity or its employees be presented to the appropriate government entity. Cal. Gov't Code § 945.4 ("no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 ... until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected.")

     The GCA "establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. Cal. Gov. Code § 911.2.  The failure to do so bars the plaintiff from bringing suit against that entity.  Id. § 945.4.; see Le Mere v. Los Angeles Unified Sch. Dist., 35 Cal. App. 5th 237, 246 (2019) (citations omitted.).  To state a tort claim against a public employee, a plaintiff must allege compliance with the GCA.  Cal. Gov. Code § 950.6; State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1244 (Cal. 2004).  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." Id. at 1239.

     To comply with the GCA, the facts contained in the written claim form to the public entity must correspond with the facts alleged in the complaint.  Blair v. Superior Court, 218 Cal. App. 3d 221, 223-24 (1990).  In other words, a claim is not sufficient where it is entirely based upon a different set of facts from those stated in the complaint.  Stevenson v. San Francisco Hous. Auth., 24 Cal. App. 4th 269, 277 (1994).

     If an injured party fails to present a timely claim, the party can present a written application to the public entity for leave to present the claim.  Cal. Gov. Code § 911.4(a). However, the application must be presented within a reasonable time, not to exceed one year after the accrual of the cause of action and must state the reason for the delay in submitting the claim.  Cal. Gov. Code § 911.4(b).  If the agency denies the application to present a late claim,

the party may petition to the court for an order of relief.  Cal. Gov. Code § 946.6(a).

Here, Plaintiff alleges that he has "exhausted all Administrative Remedies for Relief" against the City, PPD, and the Tulare DA's Office.  (Compl. ¶ 69.)  However, the complaint is devoid of any facts regarding compliance with the GCA.  Plaintiff is required to allege facts demonstrating compliance with the GCA to state a claim under California law.  Bodde, 32 Cal. 4th at 1239.  Should Plaintiff choose to amend his complaint, he must allege he complied with the GCA to assert any state law claims, if he can do so in good faith.

In the event that Plaintiff, who is proceeding *pro se*, amends his complaint to plausibly allege federal claims and that he has satisfied the GCA, the Court briefly provides legal standards relevant to the discernible state law claims listed on the cover of the complaint.

### 2.   Claim 8 for Assault

"The elements of civil assault are: demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present."  Martinez v. Garza, 2011 WL 23670, at *22 (E.D. Cal. Jan. 4, 2011) (citing Lowry v. Standard Oil Co., 63 Cal. App. 2d 1, 6-7 (1944)).  "The tort of assault is complete when the anticipation of harm occurs."  Id.  (quoting Kiseskey v. Carpenters' Tr. for So. Cal., 144 Cal. App. 3d 222, 232 (1983)).  "Mere words, however threatening, will not amount to an assault."  Id.  (citation omitted).  Critically, a state law claim for assault must be filed within two years.  Cal. Code. Civ. P. § 355.1.

Plaintiff fails to specifically allege a cause of action for assault; however, the Court presumes Plaintiff intends to assert a claim for assault against Officer Skiles.  Similar to the section 1983 claim for excessive force, however, it appears Plaintiff's state law claim for assault arising out of the October 14, 2021 incident is time-barred.  Plaintiff's complaint also alleges that on November 23, 2020, Mr. Luna threatened Plaintiff with physical violence.   (Compl. ¶ 42.) However, this also appears time-barred and is insufficiently pleaded to state a claim for assault.

### 3.   Claim Nine for Battery

To prevail on a claim for battery under California law Plaintiff must show "(1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed

or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching."  Avina v. United States, 681 F.3d 1127, 1131 (9th Cir. 2012); Brown v. Ransweiler, 171 Cal. App. 4th 516, 526–27 (2009).  "A state law battery claim is a counterpart to a federal claim of excessive use of force.  In both, a plaintiff must prove that the peace officer's use of force was unreasonable."  Brown, 171 Cal. App. 4th at 527.  The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer.  Brown, 171 Cal. App. 4th at 527 (quoting Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1102 ((2004)).  Critically, a state law claim for battery must be filed within two years.  Cal. Code. Civ. P. § 355.1.

Plaintiff fails to specifically allege a cause of action for battery; however, the Court presumes Plaintiff intends to assert a battery claim against Officer Skiles.  Similar to the section 1983 claim for excessive force, however, it appears Plaintiff's state law claim for battery arising out of the October 14, 2021 incident is time-barred.

4.   Claim Ten for False Arrest/False Imprisonment

Plaintiff fails to allege a separate claim for false arrest or imprisonment; however, the Court presumes it stems from the October 14, 2021 incident with Officer Skiles.  "Under California law, false arrest and imprisonment claims are subject to a one-year statute of limitations."  Quintanar v. Cnty. of Stanislaus, No. 1:18-CV-01403 DJC BAM, 2023 WL 5917750, at *4 (E.D. Cal. Sept. 11, 2023) (citing Cal. Civ. Proc. Code § 340).  "Though a false arrest and imprisonment claim may arise at the time of arrest, in California "the statute of limitations [does] not commence to run until [plaintiff's] discharge from jail.' "  Id. (citing Milliken v. City of South Pasadena, 96 Cal. App. 3d 834, 840 (1979)).

Plaintiff alleges he was arrested on October 14, 2021 and released from the South County Detention Center on October 15, 2021.  (Compl. ¶ 13.)   Accordingly, Plaintiff's false arrest/imprisonment claim is time-barred unless statutory or equitable tolling applies.

5.   Claim Eleven for "Invasion of Privacy"

California common law generally recognizes four types of acts that can give rise to a claim of invasion of privacy: "(1) intrusion into private matters; (2) public disclosure of private

facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." Grant v. United States, No. 2:11-CV-00360 LKK, 2011 WL 2367656, at *4 (E.D. Cal. June 9, 2011), report and recommendation adopted, No. CIV-S-11-0360-LKK, 2011 WL 2967323 (E.D. Cal. July 19, 2011) (citing Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal.4th 1, 24 (1994). California's Constitution also provides for a right to privacy that, if violated under certain circumstances, may provide a claim for invasion of privacy. Id. A two-year statute of limitation applies to both the common law constitutional theories of privacy. Hart v. TWC Prod. & Tech. LLC, 526 F. Supp. 3d 592, 599 (N.D. Cal. 2021) (citing Cal. Code. Civ. P. § 355.1).

It is unclear from Plaintiff's complaint which theory Plaintiff intends to claim and against which Defendants Plaintiff intends to hold liable for "invasion of privacy." Should Plaintiff choose to amend his complaint, he must identify the theory or theories, support the theory with plausible factual allegations, and establish the claim is not time-barred.

### 6.   Claim Twelve for Negligence

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).' " Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal. App. 4th 983, 994 (2008) (internal quotations omitted)). Further, claims for personal injury must be filed within two years. Cal. Code. Civ. P. § 355.1.

Plaintiff fails to state any factual allegations to support a claim for negligence and fails to state which, if any, Defendants are allegedly liable for negligence.

### 7.   Claim Thirteen for Civil Conspiracy

In California, civil conspiracy is not an independent cause of action. Navarrete v. Meyer, 237 Cal. App. 4th 1276, 1291 (2015), as modified (July 22, 2015). Rather, it is a theory of co-equal legal liability under which certain defendants may be held liable for "an independent civil wrong." Id. (citing Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006).) "The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage

1   resulting to plaintiff (3) from a wrongful act done in furtherance of the common design."
2   Rusheen, 37 Cal. 4th at 1062.  "The essence of the claim is that it is merely a mechanism for
3   imposing vicarious liability...."   Navarrete, 237 Cal. App. 4th at 1291 (quoting Stueve Bros.
4   Farms, LLC v. Berger Kahn, 222 Cal. App. 4th 303, 324 (2013)).  Accordingly, Plaintiff cannot
5   state a cause of action for conspiracy as an independent state law claim upon amendment.

6           8.     Claim Thirteen for Defamation

7           Plaintiff alleges the Lunas "committed deformation of character," which the Court
8   construes as alleging the Lunas defamed him.  (Compl. at 1; id. ¶ 27.)  Defamation is the
9   intentional publication of a statement of fact that is false, unprivileged, and has a natural
10  tendency to injure or that causes special damage."  Charney v. Standard Gen., L.P., 10 Cal. App.
11  5th 149, 157 (2017), review denied (July 12, 2017) (quoting Grenier v. Taylor, 234 Cal. App. 4th
12  471, 486 (2015)).  "[T]o state a defamation claim, the plaintiff must present evidence of a
13  statement of fact that is provably false."  Id. (quoting Grenier, 234 Cal. App. 4th at 486).  An
14  essential element of defamation is that the publication must be a false statement of fact rather
15  than an opinion.  Ringler Assocs. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1181 (2000).
16  "Nevertheless, a statement of opinion may be actionable '. . . if it implies the allegation of
17  undisclosed defamatory facts as the basis for the opinion.' "  Id. (quoting Okun v. Superior
18  Court, 29 Cal. 3d 442, 451–452 (1981)).

19          Slander is a false and unprivileged oral communication.  Cal. Civ. Code § 46.  " 'To
20  establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third
21  persons of specified false matter that has a natural tendency to injure or that causes special
22  damage."  City of Costa Mesa v. D'Alessio Investments, LLC, 214 Cal. App. 4th 358, 375-76
23  (2013) (quoting Mann v. Quality Old Time Service, Inc., 120 Cal. App. 4th 90, 106 (2005)).

24          Critically, the statute of limitations to file a defamation claim is within one year from the
25  date of the injury.  Cal. Civ. Code § 340(c).

26          Plaintiff alleges the Lunas defamed him twice: once on July 14, 2020 outside an
27  unspecified courtroom and a second time within forty-five days after they built the cement fence
28  on July 14, 2020.  (Compl. ¶¶ 27, 28.)  Aside from the conclusory nature of Plaintiff's

1 allegations, it appears Plaintiff's defamation claims are time-barred.[4]

2       9.    <u>Claim Seventeen for Harassment</u>

3      Plaintiff blanketly alleges the Lunas and PPD "harassed" Plaintiff.  (<u>See</u>, <u>e.g.</u>, Compl. ¶

4 22 ("Lt. Standridge sent officers to [Plaintiff's] home that evening and they asked "what's going

5 on" and harassing me") Compl. ¶ 45 ("[PPD] are contacted to perform a welfare check on me,

6 they respond and harass me").)

7      California Code of Civil Procedure 527.6 "defines 'harassment' as 'unlawful violence, a

8 credible threat of violence, or a knowing and willful course of conduct directed at a specific

9 person that seriously alarms, annoys, or harasses the person, and that serves no legitimate

10 purpose.' " <u>Rockridge Trust v. Wells Fargo, N.A.</u>, 985 F. Supp. 2d 1110, 1155 (N.D. Cal. 2013)

11 (quoting Cal. Civ. P. § 527.6).  Further, the defendant's actions "must be such that would cause a

12 reasonable person to suffer substantial emotional distress, and must actually cause substantial

13 emotional distress to the [plaintiff]."  <u>Id.</u>  "Most importantly, Section 527.6…only provides

14 injunctive relief for civil harassment."  <u>Hudson v. Yuba Cnty. Sherriff's Dep't</u>, No. 2:06-CV-

15 00906 JAMGGH, 2008 WL 2682531, at *3 (E.D. Cal. July 2, 2008).

16      Plaintiff's shotgun allegations fail to clearly allege conduct that meets the definition of

17 harassment, including that the conduct serves no legitimate purpose.  Plaintiff therefore fails to

18 state a claim for civil harassment in violation of California law.

19                       **V.**

20            **CONCLUSION AND ORDER**

21      For the reasons discussed, Plaintiff fails to state any cognizable claims for relief and shall

22 be granted leave to file an amended complaint to cure the deficiencies identified in this order, if

23 he believes he can do so in good faith.  <u>See Lopez</u>, 203 F.3d at 1127.  If Plaintiff chooses to file

24 an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

25 each named Defendant did that led to the deprivation of Plaintiff's constitutional rights or

26

27 [4] The Court is aware that due to the COVID-19 pandemic, the California legislature tolled all statutes of limitations for 180 days between April 6, 2020 and October 1, 2020.  <u>See</u> People v. Fin. Cas. & Sur., Inc., 73 Cal. App. 5th 33,

28 39 (2021) (citing Cal. Emergency R. 9).  However, even calculating the tolling period, the statute of limitation for Plaintiff's claims for slander expired on October 1, 2021, two years prior to when Plaintiff filed his complaint.

1  violations of state law.  Iqbal, 556 U.S. at 678-79.  Importantly, the "[f]actual allegations must be

2  [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555

3  (citations omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new,

4  unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)

5  (no "buckshot" complaints).

6        Finally, Plaintiff is informed that the Court cannot refer to a prior pleading in order to

7  make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended

8  complaint be complete in itself without reference to any prior pleading.  This requirement exists

9  because, as a general rule, an amended complaint supersedes the original complaint.  See

10  Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended

11  complaint supersedes the original, the latter being treated thereafter as non-existent.' ").

12        Based on the foregoing, IT IS HEREBY ORDERED that:

13    1.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file

14          an amended complaint curing the deficiencies identified by the Court in this

15          order; and

16    2.    If Plaintiff fails to file an amended complaint in compliance with this order, the

17          Court will recommend to a district judge that this action be dismissed consistent

18          with the reasons stated in this order.

19

20  IT IS SO ORDERED.

21  Dated:   **May 9, 2024**

_____
UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28